UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAUL BLUNDELL,

                            Plaintiff,                    1:15-CV-1503
                                                         (GTS/DEP)
v.

NIHON KOHDEN AMERICA,

                            Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

LAW OFFICE OF MATTHEW S. PORGES, ESQ.          MATTHEW S. PORGES, ESQ.
   Counsel for Plaintiff
641 President Street, Suite 205
Brooklyn, NY 11215

LEWIS BRISBOIS BISGAARD & SMITH LLP            PETER T. SHAPIRO, ESQ.
   Counsel for Defendant
77 Water Street, Suite 2100
New York, NY 10005

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this employment discrimination action filed by Paul

Blundell ("Plaintiff") against Nihon Kohden America ("Defendant" or "NKA"), is Defendant's

motion to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief

can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 14.)  For the reasons set forth

below, Defendant's motion is granted in part and denied in part.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Amended Complaint

Generally, in his Amended Complaint, Plaintiff alleges as follows.  (Dkt. No. 13.)

#### 1. Plaintiff's Age, Disability, and Employment with NKA

On May 7, 2013, Plaintiff, 59 years old, participated in a job interview via a Skype call[1] with representatives of NKA, a California corporation authorized to conduct business in New York with a principal place of business in Irvine, California.  (*Id.* at ¶¶ 6, 10, 13.)  During the interview, Tyler Lamb, a clinical application specialist ("CAS") with NKA, asked Kenric Thompson ("Thompson"), a manager who also took part in the interview, how old Plaintiff was.  (*Id.* at ¶¶ 13, 16.)  Plaintiff was hired and began working for NKA in May 2013 as a CAS with responsibilities "centered on teaching, but also including set up of equipment and on-site technical support."  (*Id.* at ¶ 14.)

At some point "[a]round the time of his hire," Plaintiff voluntarily provided his age to Thompson and Monica Kim ("Kim"), then a member of NKA's human resources staff.  (*Id.* at ¶ 16.)  Plaintiff also advised Thompson and Kim that he had "nerve damage caused by severe fractures" in his legs and feet.  (*Id.* at ¶¶ 11, 16.)  These disabilities substantially limit Plaintiff's "neurological and muscular functioning" as well as his ability to walk, stand, lift, run, and bend.  (*Id.* at ¶ 12.)  At the time that he was hired, Plaintiff requested, from Thompson and Kim, reasonable accommodations in the form of sitting while teaching classes.  (*Id.* at ¶ 17.)

---

[1]        Presumably, Plaintiff refers to the software program that allows users to engage in, among other things, video conference calls over the internet.

### 2. October 2013 – Comments by Coworker

On "multiple occasions" in October 2013, Cynthia Wolk ("Wolk"), Plaintiff's coworker, stated to Plaintiff that his "age and disability made him unable to perform his job." (*Id.* at ¶ 18.) Plaintiff advised Wolk that he was offended by her comments, "complained to" Thompson and Kim about the comments, and offered to "allow Wolk to take the lead on at least one account . . . to appease Wolk and to make NKA look more united." (*Id.* at ¶¶ 18-19.) Thompson did not accept Plaintiff's offer and failed to take any other corrective action regarding Wolk's comments. (*Id.* at ¶ 19.)

### 3. December 2013 – Denial of Use of Company Rental Car as a Reasonable Accommodation

In December 2013, while working on an assignment in Duluth, Minnesota, in temperatures as low as approximately negative 10 degrees Fahrenheit, Plaintiff suffered frostbite, "exacerbat[ing] his disability and ma[king] it more difficult . . . to stand." (*Id.* at ¶ 20.) The frostbite occurred after Plaintiff was "twice denied use of the company's rental car," despite the fact that he had (1) informed NKA that he needed the car as a reasonable accommodation, and (2) specifically asked the lead CAS on the assignment for use of the car. (*Id.*) Plaintiff's similarly situated coworkers were permitted to use the rental car. (*Id.*)

### 4. Other Remarks About Plaintiff's Age and Disability

During the course of Plaintiff's employment with NKA, "many CAS employees . . . technicians . . . and some contract wire pullers made comments and/or jokes about [Plaintiff's] limp and/or injured leg." (*Id.* at ¶ 21.) For example, on or around June 2, 2014, a clinical consultant named David called Plaintiff "old and gimpy." (*Id.*) At some point, Lynn Gustafson, a "senior CAS," referred to Plaintiff as a "gimp." (*Id.*) On several other occasions, some of

NKA's installers referred to Plaintiff as "the gimp" or "the old gimp."  (*Id.*)  Comments about Plaintiff's age and disability were made by a number of his coworkers in various positions with NKA.  (*Id.* at ¶¶ 21-22.)  Throughout the course of his employment, Plaintiff complained to Thompson that he was offended by these comments.  (*Id.* at ¶ 22.)  Plaintiff also complained about the comments to the "lead CAS" on assignments on which he was the secondary CAS.  (*Id.* at ¶ 26.)  However, Thompson (as well as lead CASs to whom Plaintiff complained) "did little or nothing to prevent or stop" the comments or to "penalize" the employees making them.  (*Id.*)

**5.      August 2014 – Denial of Skycap Services as a Reasonable Accommodation**

In August 2014, NKA began denying Plaintiff's requests for reimbursement "for skycap services to help him move his bags when he traveled for" NKA.  (*Id.* at ¶ 24.)  Plaintiff had advised NKA that he needed skycap services as a reasonable accommodation while traveling. (*Id.*)

**6.      October 2014 – Employee Meeting and Plaintiff's Performance Evaluation**

In October 2014, NKA held a "large employee meeting," during which Thompson introduced NKA's "gateway security expert," Mike, as "being over sixty (60) years old."  (*Id.* at ¶ 25.)  Many of Plaintiff's fellow employees "verbally indicated displeasure" with Mike's age, and Plaintiff conveyed that he "resented that displeasure."  (*Id.*)

At some other point in October 2014, Thompson gave Plaintiff a performance evaluation which criticized him "for working 'in the corner sitting in a chair[.]'"  (*Id.* at ¶ 27.)  This was "a clear reference to Thompson's distaste for [Plaintiff's] physical inability to stand for periods of time."  (*Id.*)  Thompson also "stated" that Plaintiff was required to "make continuous rounds and not sit as" he physically required.  (*Id.*)

### 7. March 2015 – Suspension of Plaintiff's Employment

On or about March 17, 2015, NKA suspended Plaintiff's employment with pay. (*Id.* at ¶ 29.) The suspension was based on multiple false allegations. (*Id.*) First, NKA asserted that Plaintiff made "racist comments to [an] African-American woman during a visit with an account." (*Id.*) In actuality, Plaintiff had no interaction with an African-American woman on the account at issue. (*Id.*) Second, NKA falsely asserted that Plaintiff "wore improper attire" and had "dirty clothes," "body odor," and "bad teeth." (*Id.*) Notably, NKA terminated Kim in January 2015, approximately two months after she had "circulated a memorandum stating that there was to be no discrimination or retaliation in the work place." (*Id.* at ¶ 28.)

### 8. April 2015 – Termination of Plaintiff's Employment

After Plaintiff was suspended, NKA's new Human Resources Director, Betzy Estrada ("Estrada"), and a Nurse Executive (and later Vice President for Clinic Excellence Programs), Veffa Devers ("Devers"), began investigating Plaintiff's claims that he had been subjected to discrimination. (*Id.* at ¶¶ 30-31.) On April 18, 2015, after "spending approximately a month reviewing [Plaintiff's] claims of discrimination," Devers and Estrada elevated Plaintiff's suspension to a termination of his employment. (*Id.* at ¶ 31.) Defendant provided "multiple changing and false reasons" for Plaintiff's termination, including alleged "racist comments" that he had made, his "lack of product knowledge," and "the alleged hygiene and attire issues" that were the (partial) basis for his suspension. (*Id.* at ¶ 35.) Devers and Estrada also concluded that Plaintiff's claims of discrimination were unsupported and that he "had acted improperly with respect to Wolk," in contradiction of Plaintiff's earlier complaints about Wolk. (*Id.* at ¶ 32.)

### 9. Plaintiff's Claims

Based upon the foregoing allegations, Plaintiff appears to assert the following claims, set forth in a single paragraph of his Amended Complaint: (1) a claim for discrimination based on his age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and an identical state law claim pursuant to New York Executive Law § 296; (2) claims for discrimination based on his disability and failure to provide reasonable accommodations, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111 *et seq.*, and identical state law claims pursuant to New York Executive Law § 296; and (3) claims for retaliation, in violation of the ADEA, ADA, and New York Executive Law § 296.  (*Id.* at ¶ 36.)

### B. Parties' Briefing on Defendant's Motion to Dismiss

#### 1. Defendant's Memorandum of Law

Generally, in support of its motion to dismiss Plaintiff's Amended Complaint, Defendant advances five arguments.  (Dkt. No. 14, Attach. 2 [Def.'s Memo. of Law].)

First, Defendant argues that Plaintiff's age discrimination claims must be dismissed for the following reasons: (a) Plaintiff has not alleged facts plausibly suggesting that his employment was terminated due to his age (*id.* at 7-8); (b) Wolk's statements, made approximately 18 months prior to Plaintiff's termination, constitute mere stray remarks unrelated to Plaintiff's suspension or termination (*id.* at 8-9); and (c) Thompson's reference to a computer expert's age at the employee meeting was facially neutral, and any disapproval voiced by unidentified coworkers cannot plausibly be attributed to NKA management (*id.* at 9).

Second, Defendant argues that Plaintiff's disability discrimination claims must be dismissed because he has failed to allege facts plausibly suggesting that the termination of his employment was causally connected to his disability for the following reasons: (a) there is no basis for imputing the comments allegedly made by coworkers to NKA decision-makers; (b) Thompson's criticism in conjunction with Plaintiff's performance review that Plaintiff worked "in the corner sitting in a chair" did not reflect improper animus, but rather that Plaintiff was not aggressive enough in advancing NKA's business; (c) he has not alleged facts plausibly suggesting that he advised NKA that he needed skycap services as a reasonable accommodation, that he had previously been granted this accommodation, or that he complained to appropriate personnel when he was denied this accommodation; and (d) in any event, these incidents were too remote in time from his termination to plausibly suggest a causal connection. (*Id.* at 11-14.)

Third, Defendant argues that Plaintiff's failure-to-accommodate claims must be dismissed for the following reasons because Plaintiff has failed to allege facts plausibly suggesting that NKA refused to engage in the interactive process or refused to furnish reasonable accommodations for the following reasons: (i) Plaintiff's allegations reflect that he requested to sit while teaching, and that NKA granted and never rescinded this accommodation; (ii) Thompson's alleged criticism in Plaintiff's performance evaluation does not plausibly suggest that Thompson breached his obligation to engage in the interactive process or rescinded the accommodation; (iii) Plaintiff has not alleged that NKA personnel knew that he needed skycap services as a reasonable accommodation, or that NKA personnel denied the accommodation or otherwise responded negatively to a request for these services; (iv) Plaintiff has not alleged facts plausibly suggesting that he advised those individuals with whom he spoke about skycap

services or the rental car that he needed either as an accommodation, that those individuals were in a position to grant or deny those accommodations on NKA's behalf, or that Plaintiff raised these issues with NKA personnel in a position to address his concerns; and (v) with respect to skycap services, Plaintiff actually received skycap services, and NKA's denial of his claim for reimbursement after the fact did not constitute a failure to accommodate because Plaintiff has failed to allege facts plausibly suggesting that he sought this accommodation at the outset of his employment. (*Id.* at 14-16.)

Fourth, Defendant argues that Plaintiff's retaliation claims related to his complaints of age discrimination must be dismissed for the following reasons: (a) Plaintiff has failed to allege facts plausibly suggesting that he made any recent complaints about discriminatory conduct based on his age such that NKA would have been on notice that discrimination was occurring; and (b) Plaintiff's complaints about Wolk's October 2013 comments were too remote in time to plausibly suggest a causal connection between those complaints and the termination of his employment in April 2015. (*Id.* at 18-21.)

Fifth, Defendant argues that Plaintiff's retaliation claims related to his complaints of disability discrimination must be dismissed for the following reasons: (a) Plaintiff has failed to allege facts plausibly suggesting that decision-makers regarding his termination were aware of his protected activity at the time of the decision to terminate his employment; (b) Plaintiff's complaints to supervisors about Wolk in 2013, and to Thompson about coworkers' "gimp" comments as late as June 2014, are too remote in time to plausibly suggest a causal connection between those complaints and his suspension (in March 2015) and termination (in April 2015); (c) because Plaintiff's suspension preceded his complaints to Estrada and Estrada's investigation

into those complaints, his complaints to Estrada were not causally connected to his suspension; and (d) NKA furnished legitimate, nonretaliatory reasons for suspending and terminating Plaintiff's employment, and Plaintiff has failed to allege facts plausibly suggesting that those reasons were pretextual.[2]  (*Id.* at 21-23.)

## 2. Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant's motion to dismiss, Plaintiff advances three arguments.  (Dkt. No. 18 [Plf.'s Opp'n Memo. of Law].)

First, Plaintiff argues that his age discrimination claims should not be dismissed for the following reasons: (a) he has alleged facts plausibly suggesting that his employment was suspended and terminated under circumstances giving rise to an inference of discrimination, specifically, that NKA (i) "failed to stop or correct" his coworkers' age-based comments and (ii) provided "multiple changing and false reasons" for his termination; (b) he has alleged facts plausibly suggesting that the reasons cited by NKA for taking adverse employment action against him were not credible but were pretextual; and (c) his coworkers' discriminatory age-

---

[2]    Defendant argues that, to the extent that Plaintiff's Amended Complaint may be understood to advance claims for hostile work environment under the ADA, ADEA, and NYSHRL, these claims should be dismissed for the following reasons: (a) Plaintiff has failed to allege facts plausibly suggesting that he suffered age-based or disability-based harassment that was sufficiently severe or pervasive to alter the conditions of his employment; (b) Plaintiff has not identified conduct related to his age that may plausibly be imputed to NKA; (c) the comments allegedly made by Wolk in October 2013, by Gustafson on a single occasion, and by installers on unknown dates constitute merely episodic incidents; and (d) the allegedly harassing conduct cannot be imputed to NKA because Plaintiff has failed to allege facts plausibly suggesting that NKA (i) failed to provide a reasonable avenue for complaints about the conduct (particularly in light of Kim's support of Plaintiff until her termination in January 2015) or (ii) failed to take corrective action.  (Dkt. No. 14, Attach. 2, at 10, 16-18 [Def.'s Memo. of Law].) However, in his opposition memorandum of law, Plaintiff asserts that he has not advanced a hostile-work-environment claim, and asserts no arguments in support of such a claim.  (Dkt. No. 18 at 10 n.3 [Plf.'s Opp'n Memo. of Law].)

based comments may be imputed to NKA because Plaintiff made "repeated complaints" to alert NKA about the comments, and NKA's failure to correct and/or prevent this behavior amounted to "a virtual opposite to the *Faragher/Ellerth* defense." (*Id.* at 10-15.)

Second, Plaintiff argues that his disability discrimination claims and failure-to-accommodate claims should not be dismissed for the following reasons: (a) his allegation that Thompson criticized him for "working 'in the corner sitting in a chair'" despite Thompson's knowing that Plaintiff required the ability to sit while lecturing, plausibly suggests that NKA harbored animus regarding his disability; and (b) NKA has not articulated any legitimate reason for why it refused his request to use the company rental car during his assignment in Minnesota. (*Id.* at 15-16.)

Third, Plaintiff argues that his retaliation claims should not be dismissed for the following reasons: (a) NKA should not be permitted to rely on the lack of temporal proximity between his complaints of discriminatory comments and his suspension and termination because NKA "failed to investigate [his] complaints for months" and thereby contributed to the lack of temporal proximity; (b) he made complaints on numerous occasions prior to Estrada's post-suspension investigation, and the fact that his employment was terminated only after Estrada more-closely examined his complaints plausibly suggests that his complaints and termination were causally connected; (c) he has alleged facts plausibly suggesting that Estrada and Devers "intertwined Estrada's alleged investigatory findings with the reasons for Plaintiff's termination," and thus, that the discrimination about which he complained was "freshly in the[ir] mind[s] . . . when they terminated" his employment; (d) he has alleged facts plausibly suggesting that NKA took adverse employment actions against him other than his suspension and termination,

specifically, (i) "removing reimbursement for" his skycap services, (ii) "attempting to discourage" him from sitting while lecturing, and (iii) denying him the use of the company rental car on his assignment in Minnesota; and (e) as with the factual allegations supporting his age discrimination claims, the factual allegations supporting his retaliation claims plausibly suggest that the reasons cited by NKA for taking adverse employment action against him were not credible but were pretextual.  (*Id.* at 17-20.)

### 3. Defendant's Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, Defendant reiterates the arguments asserted in its memorandum of law and, moreover, argues as follows: (1) in his Amended Complaint, Plaintiff did not assert a claim of discriminatory discharge (based on either his age or disability) and cannot allege new facts or theories supporting such a claim in his opposition memorandum of law; (2) even assuming that Plaintiff did assert a discriminatory discharge claim, (a) Plaintiff has not alleged facts plausibly suggesting that NKA (which hired him when he was 59 years old) discharged him because of discriminatory animus newly acquired by NKA's decision-makers, (b) isolated comments made by Wolk, "Dave," and other coworkers cannot serve as a basis to "infer that [NKA's] legitimate termination decision was actually a pretext for discrimination," and (c) while the comments of Plaintiff's coworkers may be relevant to establishing the existence of a hostile work environment (a claim that Plaintiff acknowledges he has not asserted), NKA's purported failure to address or stop such comments does not support a claim of discriminatory discharge; (3) with regard to Plaintiff's failure-to-accommodate claims, he has not alleged facts plausibly suggesting that he requested the company rental car as an accommodation through proper channels within NKA and that, in response, NKA failed to engage in the interactive

process in good faith and failed to provide the accommodation; (4) indeed, it is "evident that" the unnamed "lead CAS" to whom Plaintiff directed his request for use of the rental car (a) was "not aware that Plaintiff's request . . . was part of an accommodation request," and (b) "would not have been the person tasked with" addressing such a request for an accommodation; and (5) with regard to Plaintiff's retaliation claims, his allegation that NKA intertwined its reasons for terminating him with its investigation into his complaints constitutes merely an attempt "to prevent his own termination by belatedly engaging in putatively protected activity after being" warned of NKA's concerns about his conduct. (Dkt. No. 19 at 1-11 [Def.'s Reply Memo. of Law].)

## II.    GOVERNING LEGAL STANDARD

### A.    Legal Standard Governing Motions to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the

famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Id.* at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint

is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

**B.      Legal Standards Governing Plaintiff's Claims**

Because the parties have (in their memoranda of law) demonstrated an adequate familiarity with the legal standards governing Plaintiff's claims, the Court will not recite in detail those legal standards in this Decision and Order, which is intended primarily for the review of the parties. Rather, the Court will discuss those legal standards only where necessary below, in Part III of this Decision and Order.

**III.     ANALYSIS**

**A.      Whether Plaintiff's Age Discrimination Claims Must Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in Defendant's memoranda of law. (Dkt. No. 14, Attach. 2, at 6-9 [Def.'s Memo. of Law]; Dkt. No. 19 at 1-4 [Def.'s Reply Memo. of Law].) To those reasons, the Court adds the following analysis, which is intended to supplement, and not to supplant, those reasons.

In his opposition memorandum of law, Plaintiff expressly acknowledges that the alleged comments made by coworkers, upon which he relies to state his age discrimination claims, "were not made by decision-makers in close proximity to [his] termination." (Dkt. No. 18 at 14 [Plf.'s Opp'n Memo. of Law].) Despite this acknowledgment, however, Plaintiff argues that he has alleged facts plausibly suggesting circumstances from which an inference of age discrimination

may be drawn because "Defendant's lack of action with respect to the comments by co-workers establishes a virtual opposite to the *Faragher/Ellerth* defense." (*Id.* at 14.)

The Court finds Plaintiff's argument to be a misplaced attempt to repackage the *inverse* of an employer's affirmative defense to hostile-work-environment claims into factual allegations sufficient to state a *discriminatory discharge* claim. "Against employee claims of hostile work environment and constructive discharge, the employer may have recourse to the so-called *Faragher/Ellerth* affirmative defense." *Ferraro v. Kellwood Co.*, 440 F.3d 96, 101 (2d Cir. 2006) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 [1998] and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 [1998]). "The defense comprises two elements: that (1) the employer exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ferraro*, 440 F.3d at 101 (internal quotation marks omitted); *accord, e.g., Szwalla v. Time Warner Cable LLC*, No. 15-3479, 2016 WL 7018340, at *1 (2d Cir. Dec. 1, 2016).

The *Faragher/Ellerth* defense is typically invoked with respect to a plaintiff's hostile-work-environment claim because such a claim requires not only that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," but also "that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks omitted); *accord, Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010) ("Beyond demonstrating a hostile work environment, a plaintiff must show a basis for imputing the objectionable conduct to the employer."); *Terry v. Ashcroft*, 336 F.3d 128,

148 & n.20 (2d Cir. 2003) (noting that "[t]he same standards [applicable to Title VII hostile

work environment claims also] apply to hostile work environment claims brought under the

ADEA," and holding that, "[t]o prevail on a hostile work environment claim against the INS,

Terry must also show that there is a specific basis for imputing the conduct he complains of to

INS"); *Campbell v. New York City Transit Auth.*, 93 F. Supp. 3d 148, 164 (E.D.N.Y. 2015)

(imposing same requirements with respect to ADEA hostile-work-environment claim); *Stofsky v.

Pawling Cent. Sch. Dist.*, 635 F. Supp. 2d 272, 295 (S.D.N.Y. 2009) (noting that "[t]he

*Faragher/Ellerth* defense also applies to claims of hostile work environment in violation of the

ADEA").[3]  In short, neither the *Faragher/Ellerth* defense nor its inverse is applicable to claims

based on a plaintiff's change in employment asserted directly against an employer.  *See, e.g.,

Finnerty v. William H. Sadlier, Inc.*, 176 F. App'x 158, 163 (2d Cir. 2006) (summary order)

("The *Faragher/Ellerth* affirmative defense is about the extent to which an employee's

misbehavior may be attributed to his or her employer under principles of vicarious liability.  It

has no role in analyzing [the defendant employer's] direct liability to [plaintiff] for its own

actions with respect to the change of her employment position subsequent to her complaints of

harassment, and her alleged subsequent termination."); *see generally Sarkis v. Ollie's Bargain

Outlet*, 10-CV-6382, 2013 WL 1289411, at *11 n.10 (W.D.N.Y. Mar. 26, 2013) ("The

*Faragher/Ellerth* defense does not apply to retaliation claims brought directly against the

---

[3]        *See also Stapp v. Curry Cty. Bd. of Comm'rs*, No. 16-2067, 2016 WL 7093897, at
*4 (10th Cir. Dec. 6, 2016) (noting the "developing consensus" that the *Ellerth/Faragher* defense
applies not only to sexual harassment claims, but to a "full range" of harassment and hostile
work environment claims, and collecting cases) (internal quotation marks omitted).

employer.").[4]

In sum, because the *Faragher/Ellerth* affirmative defense concerns hostile-work-

environment and harassment claims for which an employer may be vicariously liable (claims

that, again, Plaintiff expressly acknowledges that he does not assert), it provides little guidance

with respect to whether Plaintiff has, in the first instance, properly pleaded a discrimination

claim based on his suspension and/or termination.  Rather, the appropriate rubric by which to

analyze the sufficiency Plaintiff's age discrimination claim is to examine the alleged remarks

upon which this claim is largely predicated.

"Remarks may raise an inference of discrimination if there is a nexus between the

remarks and an adverse employment decision."  *Mesias v. Cravath, Swaine & Moore LLP*, 106

---

[4]     To the extent that Plaintiff may be understood to rely upon a "cat's paw" theory to
state his discrimination claims, or, for that matter, any of his other claims (an argument not
expressly asserted anywhere in his opposition memorandum of law), the Court finds that
Plaintiff has failed to properly plead his claims pursuant to such a theory.  The cat's paw theory
"refers to a situation in which an employee is fired or subjected to some other adverse
employment action by a supervisor who himself has no discriminatory motive, but who has been
manipulated by a subordinate who does have such a motive and intended to bring about the
adverse employment action[.]"  *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 272
(2d Cir. 2016) (quoting *Cook v. IPC Intern. Corp.*, 673 F.3d 625, 628 [7th Cir. 2012]).  In
*Vasquez*, the Second Circuit held for the first time, in a Title VII retaliation case, that "an
employer may be held liable for an employee's animus . . . regardless of the employee's role
within the organization, if the employer's own negligence gives effect to the employee's animus
and causes the victim to suffer an adverse employment action."  *Vasquez*, 835 F.3d at 276.  Here,
even assuming that the Second Circuit's holding applies to ADA, ADEA, and/or NYSHRL
discrimination claims, Plaintiff has not alleged facts plausibly suggesting that any NKA
decision-maker was "manipulated" into taking an adverse employment action against him, or that
a non-decision-maker with an "impermissible bias played a meaningful role in the
[decisionmaking] process" so as to induce the adverse employment actions.  *Id.* at 272 (quoting
*Holcomb v. Iona Coll.*, 521 F.3d 130, 143 [2d Cir. 2008]); *see also Boston v. Taconic
Eastchester Mgmt. LLC*, 12-CV-4077, 2016 WL 5719751, at *8 (S.D.N.Y. Sept. 30, 2016)
(granting in defendant's motion for summary judgment because, *inter alia*, the record did not
support the proposition that plaintiff's supervisor harbored discriminatory animus or that the
employer "negligently relied on" the supervisor's statements in terminating plaintiff).

F. Supp. 3d 431, 438 (S.D.N.Y. 2015). "In determining whether a remark is probative" of discriminatory animus, courts in the Second Circuit consider (1) "who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker)," (2) "when the remark was made in relation to the employment decision at issue," (3) "the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory)," and (4) "the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 134, 149 (2d Cir. 2010); *accord*, *Martinez v. New York City Transit Auth.*, No. 15-3159, 2016 WL 7036823, at \*3 (2d Cir. Dec. 2, 2016) (summary order); *accord, Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) (observing that "remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark"), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009).

For the reasons set forth in Defendant's memoranda of law, the Court concludes that, even accepting Plaintiff's allegations as true, the remarks that he complains of do not give rise to a reasonable inference that NKA subjected him to age discrimination in relation to his suspension or termination. (Dkt. No. 14, Attach. 2, at 7-9 [Def.'s Memo. of Law]; Dkt. No. 19 at 2-4 [Def.'s Reply Memo. of Law].) As Plaintiff acknowledges, the alleged comments were not made by decision-makers and were not made "in close proximity to" his termination. (Dkt. No. 18 at 14 [Plf.'s Opp'n Memo. of Law].) For example, Wolk (Plaintiff's coworker) allegedly stated that Plaintiff's "age and disability made him unable to perform his job" in October 2013, approximately 16 months before Plaintiff was suspended in March 2015. (Dkt. No. 13 at ¶ 18.)

Moreover, Plaintiff's Amended Complaint does not reasonably support the inference that Wolk's comments were in any way related to Plaintiff's much-later suspension and/or termination. Similarly, other employees made "comments and/or jokes" that Plaintiff was "old" in 2014; but Plaintiff does not allege that these remote comments or jokes were made by supervisors or decision-makers. (*Id.* at ¶ 21.) Moreover, Plaintiff's allegation that unnamed "fellow employee[s]" at a meeting in *October 2014* "verbally indicated displeasure" regarding the age of *another* employee does not plausibly suggest that *Plaintiff* was–*months later*–suspended and terminated due to his age. (*Id.* at ¶ 25.) *See also Sicular v. N.Y.C. Dep't of Homeless Servs.*, 2010 WL 423013, at *20 n.28 (S.D.N.Y. Feb. 4, 2010), *adopted*, 2010 WL 2179962, at *1 (S.D.N.Y. May 28, 2010) (explaining that "stray comments are not evidence of discrimination if they are not temporally linked to an adverse employment action or if they are made by individuals without decision-making authority"), *aff'd*, 455 F. App'x 129 (2d Cir. 2012) (summary order); *Belardo v. Con-Way Transp. Servs., Inc.*, 02-CV-5406, 2005 WL 885016, at *4 (E.D.N.Y. Mar. 28, 2005) (concluding, on summary judgment, that certain comments directed at plaintiff, including that coworkers "sometimes referred to him as 'old man,'" were not facially discriminatory, "were made by individuals who had no involvement in [p]laintiff's termination," and were therefore insufficient to raise an inference of discrimination).

For these reasons, as well as those set forth in Defendant's memoranda of law, the Court concludes that Plaintiff has not alleged facts plausibly suggesting that his age was the but-for cause of his suspension or termination. Accordingly, Plaintiff's age discrimination claims are dismissed.

**B.**     **Whether Plaintiff's Disability Discrimination Claims Must Be Dismissed**

After carefully considering this matter, the Court answers this question in the affirmative with respect to Plaintiff's failure-to-accommodate claim predicated upon his request to remain seated while lecturing for the reasons set forth in Defendant's memoranda of law. (Dkt. No. 14, Attach. 2, at 15-16 [Def.'s Memo. of Law]; Dkt. No. 19 at 6 [Def.'s Reply Memo. of Law].) However, the Court answers this question in the negative with respect to Plaintiff's failure-to-accommodate claims predicated upon his requests for use of the company rental car and skycap services to assist in transporting his luggage while traveling on work assignments for the reasons set forth in Plaintiff's opposition memorandum of law. (Dkt. No. 18 at 15-16 [Plf.'s Opp'n Memo. of Law].) To those reasons, the Court adds three points, which are intended to supplement, and not to supplant, the aforementioned reasons.

First, as discussed above, Plaintiff expressly states in his opposition memorandum of law that no claims for hostile work environment "ha[ve] been asserted in [his] Amended Complaint." (Dkt. No. 18 at 10 n.4.) In light of this explicit acknowledgment (and the lack of the words "hostile work environment" in the Amended Complaint), the Court need not consider whether Plaintiff's counseled Amended Complaint plausibly alleges a hostile-work-environment claim.

Second, to the extent that Plaintiff's counseled Amended Complaint may be liberally construed as asserting a disability discrimination claim based on an adverse employment action (e.g., his suspension and/or termination), he has failed to oppose Defendant's facially meritorious arguments challenging the pleading sufficiency of this claim. Indeed, Plaintiff's only argument in support of this claim is that, as part of a performance evaluation approximately five months before Plaintiff's suspension, Thompson demonstrated a discriminatory animus by "criticizing

Plaintiff for working 'in the corner sitting in a chair'" pursuant to his granted accommodation to sit while lecturing.  (Dkt. No. 18 at 15 [Plf.'s Opp'n Memo. of Law] [quoting Dkt. No. 13 at ¶ 27 (Plf.'s Am. Compl.)].)  For the reasons set forth in Defendant's memorandum of law, the Court concludes that Plaintiff has failed to allege facts plausibly suggesting that he was subjected to an adverse employment action due to his disability.  (Dkt. No. 14, Attach. 2, at 11-14 [Def.'s Memo. of Law].)

Third, Plaintiff's arguments in opposition to Defendant's motion to dismiss his disability-related claims primarily concern Defendant's alleged denial of Plaintiff's request for use of  "the company rental car during the Minnesota trip as a reasonable accommodation[.]"  (Dkt. No. 18 at 15.)

"A plaintiff states a *prima facie* failure to accommodate claim by demonstrating that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his [or her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  *McMillan v. City of New York*, 711 F.3d 120, 125-26 (2d Cir. 2013); *accord, Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 18 (2d Cir. 2015) (summary order).  "[G]enerally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed."  *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006) (internal quotation marks omitted).  However, this general rule does not apply where "the disability is obvious" such that "the employer knew or reasonably should have known that the employee was disabled."  *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008); *accord, e.g., Manns v. United Airlines*, 13-CV-3668, 2016 WL 6826761, at *8 (E.D.N.Y. Nov. 17, 2016).

In this case, Plaintiff alleges that, at the outset of his employment, he voluntarily disclosed to Thompson (a manager) and Kim (a member of human resources) that he had "nerve damage caused by severe fractures," and requested from Thompson and Kim "reasonable accommodations in the form of sitting while teaching classes."  (Dkt. No. 13 at ¶¶ 16-17 [Plf.'s Am. Compl.].)  Plaintiff further alleges that, during a trip to Minnesota in December 2013, Plaintiff requested that the lead CAS on the assignment provide use of the company's rental car, and the lead CAS denied his request, despite the fact that Plaintiff "had informed NKA that he needed the car as a reasonable accommodation."  (*Id.* at ¶ 20.)  With respect to skycap services, Plaintiff alleges that, in August 2014, NKA began denying his requests for reimbursement for skycap services that he used while traveling for work, despite NKA's knowledge of his disability and the fact that Plaintiff had previously requested (and apparently received reimbursement for) skycap services as an accommodation.  (*Id.* at ¶ 24.)

Plaintiff's allegations with respect to the time and manner of his requests for an accommodation in the form of the company rental car and the use of skycap services to assist with transporting his bags while traveling on business are somewhat nonspecific.  However, the Court is mindful that, even if they are not drafted by *pro se* plaintiffs, complaints must be liberally construed.  *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").  Liberally construing the Amended Complaint's allegations as a whole, the Court concludes that Plaintiff has, albeit barely, alleged facts plausibly suggesting that he requested that NKA provide use of the company's rental car and skycap services as accommodations while traveling on a work assignment and that, despite these earlier requests and NKA's knowledge of his disability, his requests were denied.  The Court notes that Defendant does not argue that Plaintiff has not

alleged facts plausibly suggesting the first, second, and third elements of his failure-to-accommodate claim, or that use of Defendant's company rental car or skycap services would not constitute reasonable accommodations. Moreover, the Court offers no opinion as to whether Plaintiff's failure-to-accommodate claims would survive a motion for summary judgment.

Accordingly, for the reasons set forth above, as well as those in Plaintiff's opposition memorandum of law, Plaintiff's failure-to-accommodate claims related to the company rental car and skycap services pursuant to the ADA and NYSHRL survive Defendant's motion to dismiss.[5]

## C.    Whether Plaintiff's Retaliation Claims Must Be Dismissed

After carefully considering the matter, the Court answers this question in the negative for substantially the reasons set forth in Plaintiff's opposition memorandum of law. (Dkt. No. 18 at 17-20 [Plf.'s Opp'n Memo. of Law].) To those reasons, the Court adds the following analysis.

To state a claim for retaliation under the ADA, a plaintiff must allege facts plausibly suggesting that (1) "[he or s]he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against [him or her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Caskey v. Cty. of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (summary order) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 [2d Cir. 2002]). The same standard

---

[5]    Disability discrimination claims under the NYSHRL and ADA are governed by the same standards. *See Noll v. Int'l Bus. Mach. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (explaining that the same standard applies to failure-to-accommodate claims brought under both the ADA and NYSHRL); *Morse v. JetBlue Airways Corp.*, 941 F. Supp. 2d 274, 292 (E.D.N.Y. 2013) ("A claim of disability discrimination under the NYSHRL is governed by the same legal standards as govern federal ADA claims. 'Thus, to the extent that [a plaintiff] brings a state-law disability-discrimination claim, it survives or fails on the same basis as [plaintiff's] ADA claim.'") (citation omitted) (quoting *Graves*, 457 F.3d at 184 n.3).

applies to retaliation claims asserted pursuant to the ADEA and NYSHRL. *See Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (applying same standard set forth above to retaliation claims pursuant to the ADEA and Title VII); *Treglia*, 313 F.3d at 719 (applying same standard set forth above to NYSHRL retaliation claim). At the motion-to-dismiss stage, "the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise . . . in the initial phase of [employment discrimination] litigation." *Moore v. Verizon*, 13-CV-6467, 2016 WL 825001, at *14 (S.D.N.Y. Feb. 5, 2016) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 316 [2d Cir. 2015]).

With respect to engaging in a protected activity, Plaintiff has alleged facts plausibly suggesting that he informally complained about the comments identified in his Amended Complaint, made by his coworkers about his age and/or disability. More particularly, Plaintiff's Amended Complaint alleges that he complained about Wolk's October 2013 comments (although it is unclear when he did so), as well as comments made by coworkers referring to him as "old," "gimp," and/or "gimpy," including one such comment made by "David" in June 2014. (Dkt. No. 13 at ¶¶ 18, 21-22.) Plaintiff alleges that he complained about "these age- and disability-based comments" "[t]hroughout the course of his employment[.]" (*Id.* at ¶ 22.) "Informal complaints may constitute protected activity," so long as the complaints reasonably inform the employer that the plaintiff was complaining of prohibited conduct. *Chukwueze v. NYCERS*, 643 F. App'x 64, 65 (2d Cir. 2016) (summary order) (citing *Treglia*, 313 F.3d at 720 n.5). The Court concludes that, to the extent that Plaintiff has approximated when and how he made informal complaints, he has alleged facts plausibly suggesting that he engaged in a protected activity of which Defendant was aware for purposes of his retaliation claims.

With respect to experiencing adverse employment action, Plaintiff appears to argue that his suspension and termination constituted such actions, and Defendant does not argue to the contrary. (Dkt. No. 14, Attach. 2, at 19-22 [Def.'s Memo. of Law, advancing arguments with respect to the elapsed time between Plaintiff's protected activities and his suspension and termination].) Plaintiff also argues that he suffered adverse employment action for purposes of his retaliation claims when Defendant (1) "remov[ed] reimbursement for [his] skycap services" in August 2014, (2) "attempt[ed] to discourage [him] from sitting while lecturing" in October 2014, and (3) "den[ied] [him the] use of the company rental car in Minnesota in December 2013," shortly after his complaints about Wolk's comments in October 2013. (Dkt. No. 18 at 19-20 [Plf.'s Opp'n Memo. of Law].) To satisfy this element of adverse employment action, a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted); *accord, Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010); *Platt v. Inc. Vill. of Southampton*, 391 F. App'x 62, 64 (2d Cir. 2010) (summary order).

The lack of clarity in some of the allegations contained in Plaintiff's Amended Complaint renders analysis of his claims somewhat difficult. However, drawing all reasonable inferences in Plaintiff's favor, Plaintiff has alleged facts plausibly suggesting that, in August 2014, Defendant withdrew a disability-related accommodation that it had previously provided (i.e, company-funded skycap services to assist Plaintiff with luggage while traveling). (Dkt. No. 13 at ¶ 24 ["In August 2014, NKA *began to deny* Blundell the reimbursement for skycap services . . . ."]

[emphasis added].) The withdrawal of a disability-related accommodation previously provided by the employer may constitute an adverse employment action. *See generally Welch v. United Parcel Servs., Inc.*, 871 F. Supp. 2d 164, 183 (E.D.N.Y. 2012) ("The fact that Welch had been previously accommodated by being transferred out of the Nassau preload in 2006 lends credence to the notion that being transferred back to the Nassau preload was retaliatory."); *Vinson v. New York City Dep't of Corr.*, 01-CV-6900, 2006 WL 140553, at *7 (E.D.N.Y. Jan. 17, 2006) ("[P]laintiff is correct that a transfer resulting in a denial or withdrawal of a reasonable accommodation can be considered an adverse employment action."); *Honey v. Cty. of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002) ("[If] Chief Britney did refuse to accommodate plaintiff's disability as he had for the past four months [because plaintiff filed an EEOC complaint], such a refusal does constitute an adverse employment action."); *Adams v. New York State Thruway Auth.*, 97-CV-1909, 2001 WL 874785, at *15 n.11 (N.D.N.Y. Mar. 22, 2001) (Mordue, J.) (noting that a "denial of a request for a reasonable accommodation can be an adverse employment action").[6]

---

[6] Some courts have concluded that an alleged failure to accommodate a disability under the ADA or NYSHRL "subsequent to an ADA [or] NY[S]HRL . . . protected request cannot be bootstrapped into a viable disability retaliation claim." *Missick v. City of New York*, 707 F. Supp. 2d 336, 356 (E.D.N.Y. 2010) (citing *Gomez v. Laidlaw Transit, Inc.*, 455 F. Supp. 2d 81, 90 [D. Conn. 2006] ["To the extent plaintiff claims that defendant's ongoing failure to accommodate her after May 16, 2003 constituted retaliation, this claim is also insufficient as a matter of law. Requesting accommodation inevitably carries the possibility that the employer will not honor the request. If the prospect that an employer might not honor the request would deter a reasonable employee from even making the request, reasonable employees would not request accommodation. For this reason, a failure to accommodate cannot constitute retaliation for an employee's request for accommodation."]); *accord, Daley v. Cablevision Sys. Corp.*, 12-CV-6316, 2016 WL 880203, at *7 (S.D.N.Y. Mar. 7, 2016) (concluding that plaintiff's retaliation claim "cannot be premised upon his request for an accommodation . . ."); *Morris v. Town of Islip*, 12-CV-2984, 2014 WL 4700227, at *18 (E.D.N.Y. Sept. 22, 2014) ("[T]here is no evidence that defendant actually took negative employment actions against plaintiff, or that there

The circumstances surrounding Plaintiff's requests for use of the company rental car as an accommodation, and the temporal proximity of those requests to the other incidents alleged in the Amended Complaint, are even murkier. Plaintiff alleges that he "had informed NKA" that he needed use of the rental car as an accommodation but that, despite his request, he was "twice denied" use of the car. (Dkt. No. 13 at ¶ 20.) Plaintiff further alleges that he "asked the lead CAS" on an assignment in Minnesota in December 2013 "for use of the car, but she refused to allow him to use it[.]" (*Id.*) The Court is unable to discern whether Plaintiff intends to allege that he was denied use of the rental car as an accommodation by NKA during the interactive process, or that his request was actually granted at that time, but that the "lead CAS" on the Minnesota assignment improperly denied him use of the company car, or some other permutation of the alleged sequence of events. If Plaintiff intends to allege that NKA denied a request for use of the company car at the outset of his employment (i.e., when Plaintiff also allegedly requested, and was granted, the accommodation of sitting while lecturing), then it appears that NKA would have denied his request to use the company car *before* he engaged in any other protected activity, such as complaining about discriminatory treatment.

---

was any change in his working conditions, when he did not have a helper. Moreover, defendant's alleged failure to accommodate [plaintiff's] disability subsequent to an ADA . . . protected request cannot be bootstrapped into a viable disability retaliation claim.") (internal quotation marks omitted). These cases suggest that this principle is generally invoked where a plaintiff asserts a retaliation claim based solely on a request for an accommodation (a protected activity) and the denial of such a request (which may constitute an adverse employment action). In this case, however, Plaintiff has alleged facts plausibly suggesting that he engaged in protected activity other than his requests for accommodations (i.e., his informal complaints about perceived discriminatory behavior), and that NKA took materially adverse employment actions against him. Accordingly, the Court does not find Plaintiff to be attempting to "bootstrap" his retaliation claims into his failure-to-accommodate claims.

Additionally, the Court is skeptical that Thompson's single alleged "attempt[] to discourage [Plaintiff] from sitting while lecturing" in October 2014, standing alone, constitutes an adverse employment action because Plaintiff does not allege facts plausibly suggesting that this attempt would have dissuaded a reasonable worker from making or supporting a charge of discrimination. Although "[c]ontext matters," *Hicks*, 593 F.3d at 165, even "[t]hreats of retaliation standing alone do not generally constitute adverse employment actions." *Rivers v. New York City Housing Auth.*, 11-CV-5065, 2016 WL 1305161, at *16 (E.D.N.Y. Mar. 31, 2016) (citing *Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247, 269 [E.D.N.Y. 2012]); *accord, Gross v. Home Depot U.S.A., Inc.*, 386 F. Supp. 2d 296, 298 n.2 (S.D.N.Y. 2005). Plaintiff also has not alleged facts plausibly suggesting that the accommodation permitting him to sit while lecturing was ever withdrawn or that he suffered any other adverse employment action in connection with this accommodation.

However, under the circumstances, the Court concludes that, taken together, Plaintiff's factual allegations plausibly suggest that he was subjected to materially adverse employment action, and the Court therefore need not parse each individual allegation. *See Hicks*, 593 F.3d at 165 (observing that, "in determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable") (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 [2d Cir. 2006]).

With respect to causation, for the reasons set forth in Plaintiff's opposition memorandum of law, the Court concludes that, despite his somewhat inartful pleading, Plaintiff has alleged facts plausibly suggesting a causal connection between his protected activities and the adverse

employment actions to which he was subjected.  (Dkt. No. 18 at 18-20 [Plf.'s Opp'n Memo. of Law].)  Plaintiff alleges that he was subjected to discriminatory comments from "many" coworkers based on his age and disability, including in June 2014, that he complained about those comments, and that, in August 2014, he was advised that he would no longer receive reimbursement for skycap services (an accommodation that he had previously requested and was granted).  Accepting Plaintiff's factual allegations as true and drawing all inferences in his favor, the relatively close temporal proximity of these events is "sufficient to plausibly support an indirect inference of causation." *Littlejohn*, 795 F.3d at 320.[7]

Finally, although it is possible that Defendant had legitimate, nonretaliatory explanations for its actions, Plaintiff's Amended Complaint alleges facts plausibly suggesting that the proffered reasons for his suspension and termination were false.  (Dkt. No. 13 at ¶¶ 29, 35 [Plf.'s Am. Compl.].)  As a result, this issue is more appropriately resolved with the benefit of an evidentiary record on a motion for summary judgment.  *See, e.g., Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230-31 (2d Cir. 2014) ("Whether there existed non-pretextual, non-discriminatory explanations for the defendants' employment decisions–a question as to which the defendants bear the burden of production–is not properly decided on a motion to dismiss for failure to state a claim.") (citation omitted); *Amador v. All Foods, Inc.*, 12-CV-1715, 2013 WL 1306305, at *14

---

[7]     Defendant argues that Plaintiff has not alleged facts plausibly suggesting a causal connection between his informal complaints and his suspension because Plaintiff "raised his putative complaints" of discrimination "upon being told he was suspended," and Defendant suspended Plaintiff "before he brought his discrimination claims to Estrada for the first time." (Dkt. No. 14, Attach. 2, at 22 [Def.'s Memo. of Law].)  Although Defendant is correct that Plaintiff's suspension and termination were more temporally removed from his informal complaints than the other events alleged in support of his retaliation claims, Defendant's reading of Plaintiff's Amended Complaint disregards his express allegations that he complained to Thompson about discriminatory behavior well before he was suspended.

(E.D.N.Y. Feb. 20, 2013), *adopted*, 2013 WL 1282353, at *1 (E.D.N.Y. Mar. 27, 2013) (denying

defendant's motion to dismiss plaintiff's retaliation claim based on purported legitimate

explanations because, *inter alia*, plaintiff alleged that he was reprimanded for complaining about

discrimination).

Accordingly, Defendant's motion to dismiss Plaintiff's retaliation claims is denied.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to dismiss Plaintiff's Amended Complaint for

failure to state a claim upon which relief can be granted (Dkt. No. 14) is **<u>GRANTED</u> in part**

**and <u>DENIED</u> in part;** and it is further

**ORDERED** that the following claims are **<u>DISMISSED</u>** from Plaintiff's Amended

Complaint (Dkt. No. 13):

(1)  Plaintiff's age discrimination claims pursuant to the ADEA and NYSHRL;

(2)  Plaintiff's disability discrimination claims pursuant to the ADA and NYSHRL; and

(3)  Plaintiff's failure-to-accommodate claims pursuant to the ADA and NYSHRL, to the

extent that they are predicated upon his request for an accommodation to remain seated while

teaching; and it is further

**ORDERED** that the following claims **SURVIVE** Defendant's motion:

(1)  Plaintiff's failure-to-accommodate claims pursuant to the ADA and NYSHRL, to the

extent that they are predicated upon his requests for use of the company rental car and skycap

services to assist in transporting his luggage while traveling on work assignments; and

(2)  Plaintiff's retaliation claims pursuant to the ADEA, ADA, and NYSHRL; and it is

further

**ORDERED** that Defendant file an answer to Plaintiff's Amended Complaint within

**FOURTEEN (14) DAYS** of the date of this Decision and Order pursuant to Fed. R. Civ. P.

12(a)(4)(A). This case is referred back to Magistrate Judge Peebles for a Rule 16 conference and

the scheduling of pretrial deadlines.

Dated: January 23, 2017
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge