UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAUL BLUNDELL,

                         Plaintiff,

v.                                              5:15-CV-1503
                                                (GTS/DEP)
NIHON KOHDEN AMERICA,

                         Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

OFFICE OF MATTHEW S. PORGES                      MATTHEW S. PORGES, ESQ.
   Counsel for Plaintiff
641 President Street, Suite 205
Brooklyn, New York 11215-1186

LEWIS BRISBOIS BISGAARD & SMITH LLP              PETER T. SHAPIRO, ESQ.
   Counsel for Defendant
77 Water Street, Suite 2100
New York, New York 10005

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this employment discrimination and retaliation action filed

by Paul Blundell ("Plaintiff") against Nihon Kohden America ("Defendant"), are (1)

Defendant's motion for summary judgment, and (2) Plaintiff's cross-motion to strike

inadmissible record evidence.  (Dkt. Nos. 39, 42.)  For the reasons set forth below, Defendant's

motion for summary judgment is granted, and Plaintiff's cross-motion to strike is denied.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Amended Complaint

Plaintiff filed his Amended Complaint in this action on April 25, 2016.  (Dkt. No. 13.)
On January 23, 2017, the Court filed a Decision and Order granting in part and denying in part
Defendant's motion to dismiss.  (Dkt. No. 21 [Decision & Order, 1/23/2017].)  Surviving
Defendant's motion to dismiss were the following two claims: (1) his failure-to-accommodate
claim pursuant to the Americans with Disabilities Act ("ADA") and the New York State Human
Rights Law ("NYSHRL") as to (a) use of a company rental car when traveling on work
assignments and (b) use of skycap luggage transportation services when traveling on work
assignments; and (2) his retaliation claims pursuant to the Age Discrimination in Employment
Act ("ADEA"), ADA, and NYSHRL.  (*Id.* at 31-32.)

### B.    Undisputed Material Facts on Defendant's Motion for Summary Judgment

As an initial matter, the Court notes that Plaintiff responds to many of Defendant's
asserted facts (after admitting or denying them) by including additional facts.  (Dkt. No. 42,
Attach. 1, at ¶¶ 2, 7-9, 11-13, 15-16, 19, 22, 24-25, 28-29, 32, 37, 39-40, 42, 46-48 [Pl.'s Rule
7.1 Response].)  However, the purpose of the response under N.D.N.Y. L.R. 7.1 is to controvert
the asserted fact; it is not the vehicle for controverting an implied fact or adding additional facts
to place the asserted fact in context.  *See* N.D.N.Y. L.R. 7.1(a)(3) ("The non-movant's responses
shall . . . admit[] and/or deny[] each of the movant's *assertions* in matching numbered
paragraphs.") (emphasis added)*; see, e.g., Yetman v. Capital Dis. Trans. Auth.*, 12-CV-1670,
2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (citing authority for the point of law that the
summary judgment procedure involves the disputation of asserted facts, not the disputation of
implied facts); *cf. Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (noting that

plaintiff's responses failed to comply with the court's local rules where "Plaintiff's purported denials . . . improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts"); *Goldstick v. The Hartford, Inc.*, 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make"). To the extent that Plaintiff wished to assert additional material facts that precluded entry of summary judgment for Defendant, the place to do so was in a separately numbered statement of additional material facts in dispute, which Plaintiff did not do. N.D.N.Y. L.R. 7.1(a)(3). Plaintiff's added facts have therefore not been considered as part of the statement of undisputed material facts.

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendant in its Statement of Material Facts and expressly admitted by Plaintiff in his response thereto or denied without appropriate record citations. (*Compare* Dkt. No. 39, Attach. 25 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 42, Attach. 1 [Pl.'s Rule 7.1 Resp.].)

1. Defendant manufactures medical devices.

2. Defendant has adopted and enforces policies to comply with equal employment opportunity ("EEO") laws. All employees are given the employee handbook, which sets forth the policies, and are given training concerning the law and company policies, including being advised of various avenues to raise complaints about workplace conditions.

3.     Defendant employs various individuals to provide training at client sites concerning the use of its devices.

4.     Plaintiff was hired in May 2013 as a Clinical Applications Specialist ("CAS"), Second.

5.     Plaintiff's duties consisted of traveling to client locations around the country as part of a team to train client personnel to use Defendant's devices.

6.     Plaintiff was supervised by Kenric Thompson, Defendant's National Clinical Applications and Education Director, who was then CAS Manager.

7.     Plaintiff asked Defendant early in his tenure whether, as an accommodation for a medical issue with his leg, he could be allowed to sit while leading training sessions at client sites rather than having to stand; Mr. Thompson agreed that sitting would not be a problem.

8.     Plaintiff continued to sit while teaching throughout his employment with Defendant.

9.     Mr. Thompson communicated with Plaintiff on various occasions about his concerns with Plaintiff's performance.

10.     Mr. Thompson placed Plaintiff on a corrective and disciplinary action plan (which is essentially a performance improvement plan) in or about October 2014.

11.     Mr. Thompson discussed with Plaintiff in October 2014 that he was on a warning status and told him what the expectations were for improvement of his performance.

12.　At that time, Mr. Thompson offered Plaintiff the option of taking severance or staying and trying to succeed; Plaintiff chose to remain employed.

13.　Among the issues Mr. Thompson spoke about with Plaintiff were issues concerning a December 2013 assignment at Essentia St. Mary Duluth Telemetry. Mr. Thompson sent Plaintiff an email addressing the issues, which regarded complaints by the client's nurses and technicians about Plaintiff's performance.

14.　Mr. Thompson discussed with Plaintiff issues at another client site (Essentia St. Joseph Brainard) in September 2014. The criticisms there–communicated to Mr. Thompson by Heidi Strus, the ICU/Telemetry Manager–included Plaintiff's purported lack of product knowledge, inconsistencies in performance and being difficult to work with, all of which led to the client complaining that it was dissatisfied with his performance.[1]

15.　Plaintiff's Annual Performance Assessment for fiscal year 2014 (prepared by Mr. Thompson) gave Plaintiff an overall assessment rating of 2.7.

16.　Plaintiff's rating was below the standard used by Defendant to connote an acceptable level of performance; a rating of 3.0 indicates performance that consistently meets standards and reflects that employee's performance is fully acceptable and that he or she is a solid performer.

---

[1]　Plaintiff objects to this asserted fact because "it contains inadmissible hearsay in the form of what Ms. Strus . . . allegedly said to Mr. Thompson." (Dkt. No. 42, Attach. 1, at ¶ 14 [Pl.'s Rule 7.1 Resp.].) Plaintiff admits, however, that these statements were included in the Corrective and Disciplinary Action Form and does not deny that Mr. Thompson discussed these issues with Plaintiff. (*Id.*) Because the asserted fact states what Mr. Thompson discussed with Plaintiff without any apparent emphasis on whether the reported criticisms were true, this statement is not inadmissible hearsay and Plaintiff has not effected a proper denial of the actual asserted fact. *See* Fed. R. Evid. 801(c) (defining a hearsay statement as one that, in part, is offered to prove the truth of the matter asserted in the statement). This fact is therefore deemed admitted.

17. Mr. Thompson advised Plaintiff about the literature and training available online to become more conversant on Defendant's products.

18. In March 2015, Plaintiff was assigned to provide training at a client site, St. Vincent Hospital in Boston, Massachusetts.

19. Defendant received a complaint from the client about Plaintiff's performance, including from Pat Chasey of St. Vincent Hospital (who reported to St. Vincent's Manager of Clinical Engineering, Robert Gaumond), stating that Plaintiff was unprepared for training and did not look or smell professional; Mr. Gaumond requested that Plaintiff not return to St. Vincent Hospital, stating, "Please do not have [Plaintiff] come back again to our hospital for education on the other projects that we are looking to work together on."[2]

20. Defendant's Regional Vice President, Ray LeBrun, and Enterprise Account Executive for New England, Tommy Hyun, became involved to deal with the client complaints.[3]

21. Mr. Thompson directed Plaintiff to leave the worksite immediately and Plaintiff did so.

---

[2] Plaintiff objects to this statement on the grounds that is contains inadmissible hearsay. (Dkt. No. 42, Attach. 1, at ¶ 19 [Pl.'s Rule 7.1 Resp.].) As discussed above in note 1 of this Decision and Order, evidence is not hearsay unless it is offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Here, the asserted fact is not presented for the purposes of proving that Plaintiff's performance was deficient in the ways listed, but rather to establish that Defendant had received a complaint about Plaintiff's performance from a client. Because this is a permissible purpose that is relevant to the issues in this case, the Court finds that this asserted fact is based on admissible evidence. This fact is therefore deemed admitted.

[3] *See, supra*, note 2 of this Decision and Order.

22.     Defendant advised Plaintiff that he was suspended with pay at that time based on the client's complaint.

23.     Vice President for Clinical Excellence Programs Genoveffa Devers made the decision to suspend Plaintiff.

24.     In March 2015, Human Resources Director Betzy Estrada conducted an investigation about the client complaint.

25.     When Ms. Estrada told Plaintiff she was investigating the client complaint, Plaintiff advised Ms. Estrada in March 2015 that he had previously made complaints of discrimination.

26.     Ms. Estrada was unaware of any such discrimination complaints by Plaintiff until he told her about them.[4]

27.     Ms. Estrada told Plaintiff that his discrimination complaint would be investigated, which she confirmed in an email to Plaintiff on March 25, 2015.

---

[4]     Plaintiff denies this asserted fact, arguing that he had previously made complaints of discrimination to Mr. Thompson, regarding which Ms. Devers had stated that Ms. Estrada would be investigating in late March 2015.  (Dkt. No. 42, Attach. 1, at ¶ 26 [Pl.'s Rule 7.1 Resp.].)  However, neither Plaintiff's denial nor the evidence cited in support of that denial establishes that Ms. Estrada was aware of his previous complaints when Plaintiff advised her of those complaints.  *See Archie Comic Publ'ns, Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 319 (S.D.N.Y. 2003) (holding that "the facts set forth in [plaintiff's] statement are deemed established" where defendant denied assertions in plaintiff's S.D.N.Y. Local Rule 56.1 statement but declined to provide record citations in support); *N.Y. Teamsters v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (upholding grant of summary judgment where "[t]he district court, applying Rule 7.1[a][3] strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1[a][3] statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations").  This fact is therefore deemed admitted.

28. Ms. Estrada conducted an investigation concerning the performance issues and reported back to Ms. Devers.

29. The investigation concerning the client complaint included speaking with Mr. Thompson and Ms. Estrada's review of pertinent documents from Plaintiff's personnel file such as Plaintiff's performance reviews, warnings, and performance improvement plan.

30. Defendant's investigation also included speaking with Plaintiff by phone to hear his response to the specific criticisms that were being addressed.

31. After the investigation, Ms. Devers made the determination that Plaintiff should be terminated because she concluded that his performance issues (including the most-recent serious client complaint) warranted termination.

32. Defendant advised Plaintiff of the termination decision in writing in April 2015.

33. Ms. Estrada also conducted a contemporaneous investigation concerning Plaintiff's discrimination claim.

34. Ms. Estrada spoke to the individuals Plaintiff had identified as being likely to support his claim that he was harassed based on his age and disability; none of them confirmed his complaints. She also spoke to other individuals who were identified by the other witnesses; those individuals likewise did not confirm knowledge of any harassment of Plaintiff.[5]

---

[5] Plaintiff denies this asserted fact on the basis that the cited paragraph of Ms. Estrada's affidavit does not support it. (Dkt. No. 42, Attach. 1, at ¶ 35 [Pl.'s Rule 7.1 Resp.].) Although Plaintiff is correct that paragraph 5 of Ms. Estrada's affidavit does not contain the specified information, the correct information is clearly stated at paragraph 7 of that affidavit, which Plaintiff notes in his response. (Dkt. No. 39, Attach. 10, at ¶ 7 [Estrada Aff.].) Because

35.    Plaintiff advised Ms. Estrada that he had previously submitted an email or emails setting forth his complaints.

36.    Defendant's April 2015 search of Plaintiff's email account did not reveal any such email in his sent box.

37.    Plaintiff advised Ms. Estrada about the harassment and his responses to negative comments co-workers had made about him.

38.    After Ms. Estrada and Ms. Devers discussed the matter with legal counsel, it was concluded that there was no evidence to suggest that Plaintiff had been discriminated against.

39.    In an email on April 20, 2015, Ms. Estrada advised Plaintiff that Defendant found no evidence that he had been discriminated against or that he suffered any adverse employment action as a result of his age, possible medical condition, disability or perceived disability, or any other protected characteristic.

40.    Mr. Thompson was walled off from the investigation and decision-making process other than being interviewed by Human Resources.[6]

---

Ms. Estrada's affidavit clearly supports the asserted fact, Plaintiff's objection is without merit and this fact is therefore deemed admitted.

[6]    Plaintiff denies this asserted fact, arguing that Ms. Estrada's affidavit indicates that Mr. Thompson was not walled off from the investigation because he provided Ms. Estrada with information about Plaintiff's employment with Defendant. (Dkt. No. 42, Attach. 1, at ¶ 41 [Pl.'s Rule 7.1 Resp.].) Plaintiff's denial ignores the words "other than being interviewed by Human Resources"; Ms. Estrada's affidavit indicates that she spoke with Mr. Thompson, and she does not indicate any other involvement by Mr. Thompson in the investigation. (Dkt. No. 39, Attach. 10, at ¶ 5 [Estrada Aff.].) Plaintiff therefore has not provided evidence supporting his denial. *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319; *N.Y. Teamsters*, 426 F.3d at 648-49. This asserted fact is therefore deemed admitted.

41.     Initially after being hired, Plaintiff was in the habit of submitting expense reports that included a request for reimbursement of the cost of skycap services at airports.

42.     In August 2013, Defendant's accounts payable department disallowed that expense based on a company reimbursement policy.

43.     Plaintiff continued to use skycap services, paying for them himself, and never again sought reimbursement for skycap services while continuing to perform his job through March 2015.

44.     The expense for each use of skycap services was roughly $6.

45.     Plaintiff did not mention the skycap services issue during his 2015 communications with Ms. Estrada when she was investigating.

46.     Ms. Devers was also unaware of the skycap service issue before this litigation.

47.     In December 2013, Plaintiff was on assignment to a client site in Minnesota when, during an evening, he accompanied co-workers to and from dinner after working hours by walking.

48.     Plaintiff complained that he had sustained frostburn as a result of having walked in cold weather and sent an email to team members warning about the dangers of cold temperatures, to which he attached a photograph of his affected foot.  This email does not address any accommodation concerns.

49.     Plaintiff did not go to dinner with his co-workers the next evening on the same trip.

50.     After the Minnesota trip, Plaintiff was not required or requested to work in any

similar cold climate and he did not have cause or need to request any

accommodation to be provided with alternative means of transportation.

**D.     Parties' Briefing on the Pending Motions**

**1.     Defendant's Motion for Summary Judgment**

**a.     Defendant's Memorandum of Law**

In its motion for summary judgment, Defendant asserts three arguments. (Dkt. No. 39,

Attach. 24, at 16-28 [Def.'s Mem. of Law].) First, Defendant argues that Plaintiff cannot

establish a claim of retaliation because he cannot raise a genuine dispute of material fact as to a

causal connection between his reports of discrimination and his termination. (*Id.* at 17-18.)

More specifically, Defendant argues that the evidence establishes that Plaintiff was terminated

based on his poor performance despite having been provided opportunities to improve. (*Id.*)

Defendant argues that Plaintiff had been suspended based on client complaints before he made

his most-recent complaints of discrimination, and that he had previously been warned that poor

performance would be grounds for termination. (*Id.* at 18-19.) Defendant argues that Plaintiff

has not offered any evidence to rebut the evidence of poor performance or to show

discriminatory animus, but that Plaintiff merely alleges temporal proximity, which is insufficient

to establish that Defendant's assertion of poor performance is a pretext for retaliation. (*Id.* at 19-

20.) Defendant argues that the record does not show that Ms. Devers or Ms. Estrada were aware

of any prior protected activity on Plaintiff's part, and that whether Plaintiff's performance truly

was as deficient as alleged by clients makes no difference so long as Defendant's reliance on

reports of poor performance was in good faith and non-discriminatory. (*Id.* at 20-22.)

Defendant further argues that any alleged protected activity in 2014 does not suffice to show causation because (a) there is a lack of temporal proximity between that activity and Plaintiff's termination, and (b) the client complaint was an intervening event between that activity and Plaintiff's termination.  (*Id.* at 23-25.)  Defendant additionally argues that the alleged withdrawal of skycap services was not retaliatory because (a) Plaintiff never engaged in protected activity as to that service, (b) he never requested the service as an accommodation either before or after it was disapproved, (c) the denial was based on a broad company policy that applied the same to all employees, (d) the accounts payable manager did not know Plaintiff had a disability, and (e) he was never subjected to an adverse action because denial of skycap services did not alter the conditions of his employment.  (*Id.* at 25-28.)

Second, Defendant argues that Plaintiff cannot establish a claim for failure-to-accommodate because he cannot create a genuine dispute of material fact as to whether Defendant failed to provide a requested accommodation.  (*Id.* at 28-30.)  More specifically, Defendant argues that (a) Plaintiff was able to perform his job without the alleged services, (b) he did not seek skycap services as an accommodation through a formal request to Human Resources, (c) his request to use the rental car was made to a co-worker, not to Human Resources, and (d) his desire to use the car was for a after-hours dinner with co-workers and therefore cannot be considered an accommodation as part of his job duties.  (*Id.*)

Third, Defendant argues that the ADA claims are time-barred or were not preserved by Plaintiff's EEOC charge.  (*Id.* at 31.)  More specifically, Defendant argues that (a) the claims for failure-to-accommodate and retaliation related to the skycap services were based on conduct occurring more than 300 days before the filing of the EEOC charge, and (b) the EEOC charge

does not mention the failure-to-accommodate claim as to the rental car or the retaliation claim as to the skycap services. (*Id.*)

### b.    Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant's motion, Plaintiff asserts four arguments. (Dkt. No. 42, at 12-24 [Pl.'s Opp'n Mem. of Law].) First, Plaintiff argues that the affidavits provided by various supervisory and Human Resources employees of Defendant contain inadmissible hearsay statements that cannot be considered (specifically statements relating what other employees told those sources). (*Id.* at 12.)

Second, Plaintiff argues that he has established a *prima facie* case of retaliation. (*Id.* at 13-17.) More specifically, Plaintiff argues that there was temporal proximity between his reiterated complaints of discrimination and his termination one week later, and that Defendant had been aware of his complaints of discrimination even before he was suspended. (*Id.* at 14-15.) Plaintiff argues that, in conducting her investigation, Ms. Estrada purposefully searched for negative information in his personnel records to justify the decision to terminate his employment while ignoring other positive evidence related to his recent work performance. (*Id.* at 15-17.) Plaintiff also argues that there had not been a new complaint of poor work performance between the time of his suspension and his termination to justify the termination. (*Id*. at 17.)

As to whether Defendant's provided reason (i.e., Plaintiff's poor performance) was pretextual, Plaintiff argues that the evidence presented to support Defendant's stance is primarily inadmissible hearsay that cannot be considered on this motion. (*Id.* at 17-19.) Plaintiff argues that there are only two documented, non-hearsay instances of performance-related discipline evident in the record and that these written documents were both created around the same time as the submission of his reports of discrimination in 2014. (*Id.* at 18.)

Third, Plaintiff argues that there is a genuine dispute of material fact regarding his failure-to-accommodate claim as to both the skycap services and the rental car. (*Id.* at 19-23.) As to the skycap services, Plaintiff argues that Defendant has not provided any evidence of an official policy disallowing reimbursement for that service. (*Id.* at 19-20.) Plaintiff also argues that (a) the Accounts Payable Manager in charge of reimbursement was aware he had a disability because she had seen him limping, (b) he had informed Defendant of his disability and his need for this accommodation, and (c) the fact that he continued to use this service even after reimbursement was denied shows that he needed it to perform his job. (*Id*. at 20-21.) As to the rental car, Plaintiff argues that his need for this accommodation was clear because he informed Defendant of the frostbite he suffered after walking the first night he was denied use of the car, and he did not leave his hotel the second night because he was again denied use of the car. (*Id.* at 23.) Plaintiff argues that it was important for him to attend the dinner both nights because he and his co-workers were going to discuss their assignment. (*Id.*)

Fourth, Plaintiff argues that all acts occurring on or after October 22, 2014, are timely for the purposes of the EEOC, and that all acts occurring on or after August 18, 2012, are timely for the purposes of the NYSHRL. (*Id.* at 23.) Plaintiff notes that Paragraph 12 in the EEOC charge addressed the termination of skycap services in August 2014. (*Id.* at 24.) Finally, Plaintiff argues that, even if some of the alleged actions are untimely, they may still be used as background evidence when considering the timely claims. (*Id.*)

### c.    Defendant's Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, Defendant asserts two arguments. (Dkt. No. 47, at 5-14 [Def.'s Reply Mem. of Law].) First, Defendant argues that Plaintiff has failed to

create a genuine dispute of material fact as to his retaliation claim. (*Id.* at 5-9.) More specifically, Defendant argues that Plaintiff has not cited any authority to support his argument that a causal nexus is formed where an employer is investigating discrimination complaints at the same time it is considering whether to terminate on performance grounds the employee who made the complaints. (*Id.* at 5-6.) Defendant also argues that the investigation into Plaintiff's performance was not as one-sided as Plaintiff alleges and that the then-recent client complaint was a sufficient basis for termination regardless of whether Plaintiff might have recently improved or been apologetic. (*Id.* at 7.) Defendant argues that Plaintiff simply has not shown that Defendant's reason for the termination was pretextual. (*Id.* at 8-9.)

Second, Defendant argues that Plaintiff has failed to create a genuine dispute of material fact as to the failure-to-accommodate claim. (*Id.* at 9-13.) More specifically, Defendant argues that Plaintiff has not even attempted to rebut the argument that he could perform his duties without the alleged accommodations. (*Id.* at 9-10.) As to the skycap services, Defendant argues that policies need not be written to be effective and Plaintiff has provided no evidence to question the existence of the travel reimbursement policy asserted by Defendant. (*Id.* at 10.) Defendant also argues that, whether or not the Accounts Payable Manager recognized that Plaintiff might have a disability, she was not trained to make those decisions, and nonetheless Plaintiff had never actually formally requested such an accommodation for his disability and never challenged its discontinuance until after his termination. (*Id.* at 11.) As to the rental car, Defendant argues that (a) Plaintiff's request to his co-worker to use the rental car did not amount to a formal request for a disability-related accommodation, (b) he never needed this "accommodation" on any other occasion, (c) the dinner for which he wanted to use the car was

not mandatory and not part of his work duties, as evidenced by the fact he did not attend dinner on the second night of that trip, and (d) he has not identified any damages resulting from the alleged failure to accommodate.  (*Id.* at 12-13.)

### 2. Plaintiff's Cross-Motion to Strike[7]

#### a. Plaintiff's Memorandum of Law

In his opposition memorandum of law, Plaintiff also submitted a cross-motion to strike, in which Plaintiff argues that the affidavits submitted by Defendant contain numerous statements constituting inadmissible hearsay because the affiants do not have personal knowledge as to those statements.  (Dkt. No. 42, at 24-26 [Pl.'s Opp'n Mem. of Law].)  Plaintiff requests that these statements therefore be stricken from the record.  (*Id.* at 26.)

#### b. Defendant's Opposition Memorandum of Law

Generally, in opposition to Plaintiff's cross-motion, Defendant argues that Plaintiff's motion to strike should be denied.  (Dkt. No. 47, at 13-14 [Def.'s Reply Mem. of Law].)  More specifically, Defendant argues that the statements that Plaintiff asserts are inadmissible hearsay are not offered for the truth of the matter asserted, but instead are offered to show the basis for the determinations about Plaintiff's performance that justified his termination; Defendant argues that it does not matter whether or not the client complaints related in the subject affidavits are actually true, but rather whether Defendant relied in good-faith on those complaints when

---

[7]     The Court notes that Plaintiff submitted a reply to Defendant's response to the cross-motion to strike on May 15, 2018, which the Court ordered stricken from the record because Plaintiff had failed to obtain permission to file that reply in violation of N.D.N.Y. L.R. 7.1(b)(1) and (2).  (Text Order filed 5/24/2018].)  On May 24, 2018, Plaintiff filed a letter-motion requesting that the Court reconsider the Text Order, which was opposed by Defendant on May 25, 2018.  (Dkt. Nos. 52 & 53.)  The Court finds no basis for reconsidering the Text Order of May 24, 2018, and therefore denies Plaintiff's letter-motion.

determining that Plaintiff's employment should be terminated.  (*Id.* at 13.)  Defendant argues that the sources who provided the affidavits have personal knowledge because these complaints were reported to them, and that Plaintiff has not provided any legal support for the narrow definition of "personal knowledge" that he asserts.  (*Id.* at 13-14.)  Finally, Defendant argues that the Court also has broad discretion over admitting evidence for consideration and that the motion to strike should therefore be denied.  (*Id.* at 14.)

## II.    GOVERNING LEGAL STANDARDS

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[8]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.  *Anderson*, 477 U.S. at 255.  In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S.

---

[8]       As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).[9]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[10] Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that

---

[9]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[10]     *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

statement.[11]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[12] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.    ANALYSIS

### A.    Whether Plaintiff's ADA Failure-to-Accommodate Claims and ADA Retaliation Claims as to the Rental Car and Withdrawal of Skycap Services are Timely

---

[11]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[12]    *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 39, Attach. 24, at 31-32 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

"As a predicate to filing suit under [the ADA], a private plaintiff must first file a timely charge with the EEOC." *Riddle v. Citigroup*, 449 F. App'x 66, 69 (2d Cir. 2011); *see also* 42 U.S.C. § 12117 (incorporating into the ADA the exhaustion requirement of Title VII). The Supreme Court has held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," and that "[t]he charge, therefore, must be filed with the 180–or 300–day time period after the discrete discriminatory act occurred." *Nat'l. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Tewskbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999) (indicating that a plaintiff raising an ADA claim of discrimination must exhaust all administrative remedies by filing an EEOC charge within 300 days of the alleged discriminatory conduct).

"'The filing deadline for the formal [EEOC] complaint is not jurisdictional and, like a statute of limitation, is subject to equitable tolling.'" *Roy v. Buffalo Philharmonic Orchestra*, 684 F. App'x 22, 23 (2d Cir. 2017) (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 [2d Cir. 2003]). However, "'[e]quitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights,'" such as where the plaintiff is unaware of the cause of action due to the misleading conduct of the defendant. *Roy*, 684 F. App'x at 23. "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have

20

tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass*, 333 F.3d at 81.

Defendant argues that Plaintiff's ADA failure-to-accommodate claim should be dismissed because the conduct giving rise to that claim occurred more than 300 days before the filing of the EEOC charge. The Amended Complaint indicates that the incident involving the denial of use of the rental car occurred in December 2013, and that the refusal to reimburse the expense of skycap services was communicated to Plaintiff in August 2014. (Dkt. No. 13, at ¶¶ 20, 24 [Pl.'s Am. Compl.].) Plaintiff's EEOC charge is dated August 18, 2015. (Dkt. No. 13, at ¶ 4 [Pl.'s Am. Compl.]; Dkt. No. 39, Attach. 7, at 6.) Both of these incidents therefore occurred well outside of the 300-day period based on the dates asserted by Plaintiff's own Amended Complaint and reflected in the evidence of record, a fact that Plaintiff appears to concede. (Dkt. No. 42, at 23 [Pl.'s Opp'n Mem. of Law] ["Therefore, acts occurring on or after October 22, 2014 are timely under federal discrimination laws."].) As a result, the Court finds that the ADA failure-to-accommodate claims (and the retaliation claim related to the withdrawal of skycap services pursuant to the ADA) should be dismissed as untimely.

Even though Plaintiff does not argue as much, the Court notes that it has found no basis in the record for applying the doctrine of equitable tolling to these untimely claims. Nothing in the record shows that Plaintiff experienced any circumstances that prevented him from filing his EEOC charge sooner, much less that those circumstances were extraordinary. Notably, Plaintiff does not provide any reasons as to why the doctrine of equitable tolling should apply.

Based on the above, the Court grants Defendant's motion to dismiss (1) the entirety of Plaintiff's failure-to-accommodate claims pursuant to the ADA and (2) those portions of his retaliation claims as to the withdrawal of skycap services pursuant to the ADA.

**B.** **Whether There Is a Genuine Dispute of Material Fact as to Plaintiff's Claims of Failure-to-Accommodate Pursuant to the ADA and NYSHRL**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memoranda of law. (Dkt. No. 39, Attach. 24, at 28-30 [Def.'s Mem. of Law]; Dkt. No. 47, at 9-13 [Def.'s Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

As discussed above in Part III.A of this Decision and Order, Plaintiff's ADA failure-to-accommodate claim must be dismissed as untimely. In the alternative, the Court finds that this claim (as well as the analogue failure-to-accommodate claim pursuant to the NYSHRL) must also be dismissed on the merits for failure to create a genuine dispute of material fact as to those claims.

Disability discrimination claims brought under the ADA and the NYSHRL are governed by the same standards. *See Noll v. Int'l Bus. Mach. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (explaining that the same standard applies to failure-to-accommodate claims brought under both the ADA and NYSHRL); *Morse v. JetBlue Airways Corp.*, 941 F. Supp. 2d 274, 292 (E.D.N.Y. 2013) ("A claim of disability discrimination under the NYSHRL is governed by the same legal standards as govern federal ADA claims. 'Thus, to the extent that [a plaintiff] brings a state-law disability discrimination claim, it survives or fails on the same basis as [plaintiff's] ADA claim.'").

"To plead a failure-to-accommodate claim, a plaintiff must allege that '(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [his] disability; (3) with reasonable accommodation, plaintiff could perform the

essential functions of the job at issue; and (4) the employer refused to make such accommodations.'" *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 18 (2d Cir. 2015) (quoting *McMillan v. City of New York*, 711 F.3d 120, 125-26 [2d Cir. 2013]). "[G]enerally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006). However, this general rule does not apply where "the disability is obvious" such that "the employer knew or reasonably should have known that the employee was disabled." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008).

Assuming for the purposes of this motion that Plaintiff's statements to Defendant during his hiring and training process that he had nerve damage in his leg related to previous severe fractures are sufficient to satisfy the first and second elements of the above-described test, the Court finds that it is the fourth element of the analysis that is squarely at issue in the parties' arguments. For that reason, and because the Court finds (as discussed further below) that Plaintiff cannot establish that element on the evidence before the Court, the Court need not, and does not, discuss the third element.

The fatal flaw in Plaintiff's arguments regarding both the rental car and withdrawal of skycap services is that he fails to allege, let alone establish through admissible evidence, that he ever actually made a request for these accommodations based on his disability to the appropriate people. An employer is not ordinarily required to provide accommodations where the employee has not requested the accommodations. *See Dooley*, 636 F. App'x at 18-19 (finding that the plaintiff could not establish the fourth prong of the test because she did not allege that she had ever requested the accommodation at issue, noting that "an employer cannot 'refuse [ ] to make

[an] accommodation' . . . that is was never asked to make") (internal citations omitted); *see also Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 129 (1st Cir. 2009) ("An employer's duty to accommodate an employee's disability is ordinarily activated by a request from the employee, and the request must be sufficiently direct and specific to give the employer notice of the needed accommodation.").

Plaintiff's deposition testimony indicates that, when he began his employment with Defendant, they discussed accommodations he needed for his disability, which included the need to walk slowly and steadily, to use a cane when necessary, to be seated while teaching, and to be seated during rounds. (Dkt. No. 39, Attach. 4, at 8 p. 24:18-24 [Pl.'s Dep.].) He did not indicate that he ever asserted needing skycap services or other travel accommodations; rather, he affirmatively stated that there were no specifics discussed at the start of his employment related to travel accommodations. (*Id.* at 18 p. 65:19 to 19 p. 66:1-13.) He also affirmatively stated that he never requested an accommodation for skycap services, but rather simply included that expense on this expense reports until he was told that skycap expenses were not reimbursable. (*Id.* at 19 p. 67 to 20 p. 70.) Moreover, once he was informed that skycap expenses were not reimbursable, Plaintiff did not submit a request that skycap services be reimbursed as an accommodation for his disability, but instead began to pay for the service out-of-pocket. (*Id.*) Similarly, he admitted that he did not submit prior authorization to rent a car for himself prior to the December 2013 trip, which he acknowledged was required under Defendant's standard protocol. (*Id.* at 16 p. 55:20-25.) Rather than follow the procedure to get approved for his own rental car, Plaintiff asked co-workers on an *ad hoc*, informal basis if he could use the rental cars those co-workers had been authorized to rent. (*Id.* at 16 pp. 56-57; Dkt. No. 13, at ¶ 20 [Pl.'s

Am. Compl.].)  Plaintiff offers no evidence that either the Accounts Payable Manager in charge of making reimbursement decisions or his co-workers had any authority to accept accommodation requests or to make accommodation decisions on behalf of Defendant.  Of note, the Employee Handbook indicates that "[a]ny qualified applicant or employee with a disability who requires an accommodation in order to perform the essential functions of the job should contact *Human Resources* and request an accommodation."  (Dkt. No. 39, Attach. 5, at 37 [emphasis added].)  The record evidence simply does not establish that Plaintiff ever made a request to Human Resources for the accommodations he now argues were not provided, or that Defendant should have been aware that Plaintiff otherwise required accommodations for his disability in addition to those he had affirmatively requested at the commencement of his employment.

Additionally, as to use of the rental car in December 2013, although Plaintiff argues that the after-hours dinner would include a discussion of the current work assignment, he offers no evidence that would create a genuine dispute of material fact as to whether this dinner was in fact a mandatory part of his work duties.  As Defendant notes, Plaintiff chose not to attend the dinner on the second night of the trip and did not assert that he suffered any job-related repercussions or discipline for that choice.  There is therefore no admissible record evidence establishing that the informal requests to use the rental car on that occasion was for the purpose of allowing Plaintiff to perform his work duties.

For all of the above reasons, Plaintiff has not shown that he can establish the fourth element as to either the skycap services or the rental car.  The Court therefore grants Defendant's motion to dismiss the failure-to-accommodate claims under the ADA and NYSHRL.

**C.** **Whether There Is a Genuine Dispute of Material Fact as to Plaintiff's Claims for Retaliation Pursuant to the ADA, ADEA, and NYSHRL**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memoranda of law. (Dkt. No. 39, Attach. 24, at 15-28 [Def.'s Mem. of Law]; Dkt. No. 47, at 5-9 [Def.'s Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

Plaintiff's retaliation claims pursuant to the ADA, ADEA, and NYSHRL are all governed by the same standard. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (applying the same standard to retaliation claims brought under Title VII and the ADEA); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (retaliation claims brought under the NYSHRL are governed by the same standards as the ADA); *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) (applying the framework for analyzing retaliation claims under Title VII to a claim of retaliation under the ADA). "To establish a prima facia case of retaliation . . . , a plaintiff must establish that (1) the employee was engaged in activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Sarno*, 183 F.3d at 159.

The parties appear to concede that Plaintiff was engaged in protected activity (i.e., reporting discrimination at the hands of his co-workers) and that Plaintiff suffered an adverse action (i.e., termination from employment), and the admissible record evidence establishes these elements for the purposes of this motion. The parties also agree that Defendant eventually did become aware of Plaintiff's reports of discrimination, although they disagree as to when that knowledge was imparted. The main issue in contention is whether there was a causal connection

between Plaintiff's reports of discrimination and his termination. The Court finds that, even if Plaintiff can arguably establish a causal connection for the purposes of establishing a *prima facie* case of retaliation based on the temporal proximity between when he made a report of discrimination to Ms. Estrada and his termination, the admissible record evidence does not establish that Defendant's good-faith reasons for the termination were merely pretextual.

As an initial matter, Plaintiff argues that the affidavits submitted by Defendant from Ms. Devers, Ms. Estrada, and Mr. Thompson contain inadmissible hearsay statements that should be stricken from the record. The Court disagrees. As Defendant correctly argues, Fed. R. Evid. 801(c) defines hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Defendant does not offer the statements at issue in order to prove that Plaintiff had in fact committed the infractions reported by Defendant's clients, but to establish that clients had complained about Plaintiff and therefore Defendant had a good-faith basis for terminating Plaintiff's employment. *See Cain v. Atelier Esthetique Institute of Esthetics, Inc.*, 733 F. App'x 8, 12-13 (2d Cir. 2018) (finding that testimony as to the complaints made by other students was not hearsay because it was offered not to prove the truth of those complaints but to establish that those complaints had been made); *Gregori v. Eckerd Corp.*, 01-CV-0092, 2002 WL 1628947, at *2 (W.D.N.Y. June 5, 2002) (finding a cashier's statement was not offered for the truth of the matter asserted [that milk was actually spilled on the floor] but rather to show that the store was aware of a dangerous condition). As Defendant argues, the pertinent issue is not whether the client complaints were actually true, but whether Defendant relied on those complaints in good-faith when deciding to terminate Plaintiff's employment.

(Dkt. No. 39, Attach. 24, at 20-21 [Def.'s Mem. of Law]; Dkt. No. 47, at 13-14 [Def.'s Reply Mem. of Law].)  The Court therefore finds that the identified statements in the affidavits are not inadmissible hearsay and denies Plaintiff's motion to strike.

Considering these statements and the rest of the admissible evidence, the Court finds that Plaintiff cannot meet his burden to show that Defendant's proffered reason was pretextual.  The only evidence asserted in favor of his claims is the temporal proximity between his reiteration of complaints to Ms. Estrada on April 7, 2015, and his termination on April 14, 2015.  (Dkt. No. 42, at 14 [Pl.'s Opp'n Mem. of Law].)  However, temporal proximity alone is not sufficient to establish causal connection for the purposes of showing that a proffered reason is pretextual.  *See El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a *prima facie* case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext.").

Plaintiff argues that the fact that there were no more-recent complaints about his work in the time between his suspension and his termination shows that the decision to terminate him was based on retaliation rather than on his work performance.  (Dkt. No. 42, at 15 [Pl.'s Opp'n Mem. of Law].)  However, Plaintiff's argument ignores the fact that Defendant suspended Plaintiff immediately upon receiving the March 2015 client complaint and subsequently conducted an investigation into both that complaint and other matters, including Plaintiff's personnel file.  Plaintiff also fails to cite any legal authority supporting his argument that another intervening complaint was required to show that Defendant's reason for the termination was not pretextual.  Similarly, Plaintiff's argument that Defendant ignored his apology and efforts to

improve (and focused only on negative information) is unavailing to show that Defendant's proffered reason was pretextual. (Dkt. No. 42, at 15-16 [Pl.'s Opp'n Mem. of Law].) These counter-assertions (some of which are based only on Plaintiff's speculation as opposed to admissible evidence) do not undermine the wealth of evidence showing client complaints and other disciplinary issues that provide support for Defendant's proffered reason. Of note, in addition to the most-recent complaint from St. Vincent Hospital, the evidence substantiates previous client complaints from December 2013 and September 2014. (Dkt. No. 39, Attach. 16, at ¶¶ 7-9 [Thompson Aff.]; Dkt. No. 50, at 2-3.) These incidents had resulted in discipline in October 2014, with the disciplinary form noting that Plaintiff was offered a voluntary severance package at that time if he would resign, but that Plaintiff chose to stay "with a corrective action plan and understanding that any complaint from any account regarding performance and not meeting expectations would result in termination of employment"; it was also noted that this disciplinary action was "his final written warning." (Dkt. No. 50, at 3.) The fact that Defendant affirmatively informed Plaintiff in October 2015 that any further client complaints would be likely to result in termination of his employment undermines Plaintiff's assertion that Defendant was retaliating against him for reiterating his discrimination complaints in April 2015. Rather, given the evidence, a reasonable fact finder would have no choice but to conclude that Defendant was merely following through on the warning made in the October 2014 disciplinary notice by terminating Plaintiff's employment following a subsequent, well-documented client complaint.

Plaintiff lastly attempts to cast doubt on the October 2014 disciplinary notice, arguing that the notice itself was in retaliation for his initial complaints of discrimination made to Mr. Thompson and former Human Resources Manager Monica Kim in October 2014. (Dkt. No. 42,

at 18 [Pl.'s Opp'n Mem. of Law].)  However, "[a] notice of discipline that does not create a materially adverse change in working conditions is not a materially adverse employment action." *Mitchell v. SUNY Upstate Med. Univ.*, 243 F. Supp. 3d 255, 279 (N.D.N.Y. 2017) (citing *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 86 [2d Cir. 2001]).  This disciplinary notice, which provided counseling on how to improve and a warning that further negative performance would lead to termination, did not affect a materially adverse change in Plaintiff's working conditions and therefore does not itself constitute an adverse action.  Given that the relevant adverse action is Plaintiff's termination, the Court agrees with Defendant that any discrimination complaints made in October 2014 cannot constitute the protected activity to support Plaintiff's claim because any causal connection between those October 2014 complaints and his termination was broken by the intervening event of the March 2015 client complaint. Additionally, Plaintiff's assertion that the October 2014 disciplinary notice was itself retaliatory is supported by nothing but his own speculation, a speculation that is undermined by the fact that the second of the incidents addressed by this notice was reported to Mr. Thompson in early October 2014.  (Dkt. No. 50, at 2-3, 13.)[13]  Consequently, whether or not the notice was written in temporal proximity with Plaintiff's alleged complaints about discrimination (which, as far as the Court can see, are not documented in the evidence), it was also written in temporal proximity to the most-recent client complaint at that time.  Plaintiff simply has not adduced any evidence to create a genuine dispute of material fact as to the legitimacy of the October 2014 disciplinary notice.

---

[13]     Plaintiff also argued that Defendant did not address these incidents with him until the October 2014 performance review.  However, email evidence from December 2013 shows that Mr. Thompson in fact sent Plaintiff an email in follow-up to a conversation they had about the December 2013 incident.  (Dkt. No. 39, Attach. 5, at 6.)

For all of these reasons, the Court finds that Plaintiff cannot establish that his complaints of discrimination by co-workers was a motivating factor, much less the but-for cause, of his termination.[14]  The Court therefore grants Defendant's motion as to Plaintiff's retaliation claims pursuant to the ADA, ADEA, and NYSHRL.

### D.        Whether Plaintiff's Cross-Motion to Strike Should Be Granted

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendant's reply memorandum of law (Dkt. No. 47, at 13-14 [Def.'s Reply Mem. of Law]), as well as those stated above in Parts I.B and III.C of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's letter motion (Dkt. No. 52) requesting that the Court reconsider its Text Order issued on 5/24/18 (Dkt. No. 51) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 39) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's cross-motion to strike (Dkt. No. 42) is **DENIED**; and it is further

---

[14]        Plaintiff has also alleged that the withdrawal of skycap services was a retaliatory action.  However, the Court finds that Plaintiff has not shown that this constituted an adverse action.  The Second Circuit defines a materially adverse action as one that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010).  It is undisputed that the charge for skycap services was approximately $6 per use.  The Court does not believe that a reasonable fact finder could conclude that such a small charge for a service that Plaintiff did not even formally request as a disability-related accommodation (as discussed above in Part III.B of this Decision and Order) would dissuade a reasonable worker from reporting the level of pervasive discrimination that Plaintiff alleges he experienced.  Plaintiff therefore cannot establish a *prima facie* case as to retaliation based on the withdrawal of skycap services.

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 13) is **<u>DISMISSED</u>**.

Dated: September 25, 2018
     Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge